IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| JENNIE L. OROSCO,<br>     Plaintiff,<br><br>Vs.<br><br>NCO FINANCIAL SYSTEMS, INC.<br>     Defendant. | Case No. _____<br><br><br>COMPLAINT AND DEMAND FOR JURY TRIAL |

**COMES NOW**, Plaintiff, Jennifer Orosco, and for her cause of action against

Defendant states:

## I. INTRODUCTION

1. This is an action for damages brought by an individual consumer for Defendant's

    violations of the Fair Debt Collection Practices Act (hereinafter FDCPA), 15

    U.S.C. § 1692, et seq. and the Iowa Debt Collection Practices Act (hereinafter

    IDCPA), Iowa Code § 537.7103, et seq. which prohibits debt collectors from

    engaging in abusive, deceptive, and unfair practices.

## II. JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. § 1337,

    and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C.

    § 1367. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

    Venue is proper because Defendant transacts business here and the allegations

    complained of occurred here.

## III. PARTIES

3. Plaintiff Jennie Orosco, hereinafter referred to as Jen, is a natural person residing in Polk County, Iowa. Jen is a "consumer" as defined by 15 U.S.C. § 1692a(3) and Iowa Code § 537.1301(10) and/or a person affected by a violation of the FDCPA and IDCPA with standing to bring a claim under 15 U.S.C. § 1692k and Iowa Code § 537.5201(1)(y).

4. Defendant, NCO Financial Systems Inc. hereinafter referred to as NCO, is a debt collector that conducts business in Iowa with its home office located at Horsham, PA. Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and Iowa Code § 537.7102(5) (2007).

## IV. FACTUAL ALLEGATIONS

5. NCO is attempting to collect an alleged debt from Jen.

6. Jen's alleged obligation was a "debt" as defined by 15 U.S.C. § 1692a(5) and Iowa Code § 537.7102(3).

7. On or about 1/17/2009, NCO's agent named "Anthony Copolla," hereinafter referred to as "Anthony," contacted Jen. Anthony told Jen she allegedly owed $4,600.00 on a Capital One Credit card. Jen gave Anthony permission to speak with her father regarding settlement of the debt.

8. On or about 1/23/2009, Anthony contacted Jen's father, Sam Orosco. Mr. Orosco agreed to settle the alleged debt for $3,000 with no interest charges. Anthony indicated a lawyer would have to approve the settlement. Later that same day, Anthony contacted Mr. Orosco and told him the deal was approved. Mr. Orosco requested written confirmation of the settlement agreement and explained no

2

money would be given until the agreement is in writing.  Anthony agreed to Mr. Orosco's request.

9.  Over the course of the next week, Mr. Orosco and Jen left messages for Anthony to follow up on the written agreement.  Anthony did not return any calls.

10. On or about 2/3/2009, Jen received a postcard from her bank.  The postcard indicated a service fee of $37.50 was charged to her account due to a returned/unauthorized e-payment.  The e-payment was presented on January 30, 2009 for $3,230.00.  As a result of the notice, Jen contacted her bank.  Jen informed the bank she did not authorize the e-payment.  Jen closed her bank account and filed a fraud report, affidavit and a police report.

11. On or about 2/9/2009, Jen received a voicemail from another NCO agent named "Daniel Thompson," hereinafter referred to as "Daniel."  Jen returned Daniel's call.  Daniel asked Jen why she claimed the e-payment as fraud.  Jen informed Daniel she did not authorize NCO to withdraw $3,230.00 from her account.  Jen further explained she believed a settlement was reached between Mr. Orosco and Anthony.  Daniel informed Jen that a settlement was not reached and he did not have time to speak to a "child who pawned off her responsibilities to her parents."  In addition, Daniel told Jen she had until 4:00 p.m. central time to make a payment of $3,230.  Daniel further instructed the payment be via a money gram or Western-Union.  Jen believe she would be sued immediately if the payment was not sent.

12. On or about 2/9/2009, Jen contacted Anthony.  Jen inquired about the prior settlement.  Anthony admitted he lied about the settlement being approved and proceeded to yell at Jen when she questioned him further.

3

13. Daniel and Anthony's statements to Jen were abusive and false. The statements were made to coerce payment from her.

14. Jen suffered emotional distress, including but not limited to, fear, frustration and anger, as a result of the conduct outlined above.

## V. **FIRST CLAIM FOR RELIEF**

15. Jen realleges herein, as if set out in full, the allegations contained in paragraphs one (1) through fourteen (14).

16. Defendant violated the FDCPA, Defendant's violations include, but are not limited to, the following:

   a. Defendant violated 15 U.S.C. § 1692d(2) by using language which the natural consequence thereof is to abuse the hearer.

   b. Defendant violated 15 U.S.C. § 1692e(2)(A) by misrepresenting the amount of the debt owed.

   c. Defendant violated 15 U.S.C. §§ 1692e(2)(A), e(5) and e(10) by misrepresenting the imminence of legal action.

   d. Defendant violated 15 U.S.C. § 1692f(1) by using unfair or unconscionable means to collect the debt when Defendant attempted to collect an amount not authorized by the agreement or permitted by law.

17. As a result of the above FDCPA violations, Defendant is liable to Jen for statutory damages in an amount up to $1,000 pursuant to 15 U.S.C. § 1692k(a)(2)(A), actual damages pursuant to 15 § U.S.C. §1692k(a)(1) and reasonable attorney fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

4

## VI. <u>SECOND CLAIM FOR RELIEF</u>

18. Jen realleges herein, as if set out in full, the allegations contained in paragraphs one (1) through seventeen (17).

19. Defendant violated the Iowa Debt Collection Practice Act, hereinafter referred to as the IDCPA. Defendant's violations of the IDCPA include, but are not limted to, the following:

   a. Defendant violated Iowa Code § 537.7103(1)(f) by taking an action prohibited by Iowa Code Chapter 537 or any other law.

   b. Defendant violated Iowa Code § 537.7103(2)(a) by using language which is intended to abuse the hearer.

   c. Defendant violated Iowa Code § 537.7103(4)(e) by making a representation that tends to create a false impression of the character, extent, or amount of the debt or its status in a legal proceeding.

   d. Defendant violated Iowa Code § 537.7103(5)(d) by attempting to collect an amount not authorized by the agreement.

20. As a result of the above IDCPA violations, Defendant is liable to Jen for statutory damages ranging from $100.00 to $1,000.00 pursuant to Iowa Code § 537.5201(1)(y), actual damages pursuant to Iowa Code § 537.5201(1)(y) and cost and attorney fees pursuant to Iowa Code § 537.5201(8).

## VII.   RELIEF REQUESTED

**WHEREFORE**, Plaintiff, respectfully requests that judgment be entered against the Defendant for the following:

A.   Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(a) and Iowa Code §537.5201(1)(y).

B.   Actual damages pursuant to 15 U.S.C. § 1692k(a)(1) and Iowa Code § 537.5201(1)(y).

C.   Costs and attorney fees pursuant to 15 U.S.C. § 1692k(a)(3) and Iowa Code §537.5201(8).

D.   For such other relief as the Court deems appropriate under the circumstances.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury.

Respectfully submitted,

RAY JOHNSON
AT0004019

ANGELA Y. GRUBER-GARDNER
AT0003044
Johnson Law Firm
950 Office Park Rd.
Suite 335
West Des Moines, Iowa 50265
Phone: (515) 224-7090
Fax: (515 222-2656

ATTORNEYS FOR PLAINTIFF